FILED
CHARLOTTE, NC
JUL 13 2011
U.S. DISTRICT COURT
WESTERN DISTRICT OF NC

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| SLEP-TONE ENTERTAINMENT CORPORATION,<br>Plaintiff,<br><br>v.<br><br>BEVERLY GLASS,<br>Defendant. | CASE NO. 3:11cv 335<br><br>**FILED UNDER SEAL** |

## COMPLAINT

The Plaintiff, Slep-Tone Entertainment Corporation ("SLEP-TONE"), by its undersigned counsel, complains of the Defendant and for its complaint alleges as follows:

### THE PARTIES

1. Plaintiff SLEP-TONE is a North Carolina corporation having its principal place of business at 14100 South Lakes Drive, Charlotte, North Carolina.

2. Defendant Beverly Glass ("GLASS") is an individual having a business address at 124 Smith Branch Court, Kernersville, North Carolina 27284.

### JURISDICTION AND VENUE

3. This is an action for trademark infringement and unfair competition arising under §§ 32 and 43 of the Trademark Act of 1946, 15 U.S.C. §§ 1114 and

1

1125. This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United States.

4. This Court further has jurisdiction pursuant to 28 U.S.C § 1338(a), in that this civil action arises under an Act of Congress relating to trademarks, and, as to the Plaintiff's Lanham Act unfair competition claim, pursuant to 28 U.S.C. § 1338(b), in that the claim is joined with a substantial and related claim under the trademark laws of the United States.

5. This Court has supplemental jurisdiction over the subject matter of the Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a), in that those claims are so related to the Plaintiff's federal claims that they form part of the same case or controversy.

6. Venue is proper in this District and Division under 28 U.S.C. § 1391(b), in that a substantial part of the property that is the subject of the action is situated in this District and Division.

## BACKGROUND FACTS

7. SLEP-TONE is a leading manufacturer of karaoke accompaniment tracks under a well known label in the karaoke industry, SOUND CHOICE.

8. Karaoke accompaniment tracks are sound recordings with associated graphical displays that provide karaoke singers with lyrical and timing cues to allow them to sing along to the sound recording.

9. In order to manufacture a karaoke accompaniment track, SLEP-TONE or one of its affiliated companies produces a studio recording of a popular song, designed as a "sound alike" for a popular recording of the song, but with the lead vocals omitted.

10. Stated another way, the musical portion of SLEP-TONE's karaoke accompaniment tracks is entirely SLEP-TONE's recording; it does not utilize the original artist's recording in any fashion.

11. SLEP-TONE then adds lyrical and timing cues and other information to the video portion of the karaoke accompaniment track for use by the singer during the performance.

12. In order to manufacture its recordings, SLEP-TONE arranges for licenses from the music publisher or other person holding rights in the musical work underlying the recording.

13. These licenses provide for the payment of royalties and thus ensure that the rights holder in the musical work is properly compensated when SLEP-TONE manufactures and sells its karaoke accompaniment tracks.

14. Pursuant to these licenses, SLEP-TONE distributes its karaoke accompaniment tracks for commercial purposes only on compact discs and via no other medium.

15. Historically, SLEP-TONE distributed the karaoke accompaniment tracks only in a format known as "CD+G," or "compact disc audio plus graphics." More recently, SLEP-TONE has also begun distributing the karaoke accompaniment tracks, with significant additional restrictions, in an alternative format known as "MP3G," or "MP3 audio and graphics."

16. Regardless of the format, however, the tracks are delivered via compact discs only.

17. SLEP-TONE and its affiliated companies have spent millions of dollars building and maintaining studios, hiring artists, building a distribution facility, paying royalties to copyright owners, building a company that is capable of reliably producing high-quality karaoke versions of current and historical musical hits, and building a brand that is one of the pre-eminent brands in the industry.

18. Karaoke is a very popular form of participatory entertainment, commonly used to attract patrons to commercial establishments ("venues") such as bars, restaurants, bowling alleys, social clubs, festivals, and other public accommodations.

4

19. Karaoke is also a common form of entertainment for private parties such as weddings, bar/bat mitzvahs, "sweet sixteen" parties, anniversary parties, business conferences, and the like.

20. In order to provide a karaoke show to its patrons, venues and private parties often contract with a specialized provider known as a "karaoke jockey" or "KJ."

21. Typically, it is the responsibility of the KJ to provide the karaoke accompaniment tracks and the sound and video equipment, as well as to organize the show by controlling access to the microphone.

22. In order to provide karaoke accompaniment tracks for karaoke shows, it is necessary for KJs to obtain them from a source, licit or illicit.

23. In the past, KJs would primarily obtain SLEP-TONE's karaoke accompaniment tracks by purchasing original compact discs from SLEP-TONE directly or from an authorized distributor.

24. Because of the expense of obtaining karaoke accompaniment tracks legitimately, a large percentage of KJs choose instead to obtain their tracks in other ways, such as by purchasing computer hard drives that have been preloaded with karaoke tracks, by swapping copies of tracks with other KJs, or by downloading tracks from illicit websites that provide free or inexpensive access to shared copies of tracks.

5

25. As a result, SLEP-TONE's sales of legal tracks have declined by more than 80%, even though the demand for its body of work is higher than ever.

26. SLEP-TONE does not authorize the digitization or transfer of its SOUND CHOICE-branded karaoke accompaniment tracks for any purpose, and any sale of SLEP-TONE's karaoke accompaniment tracks that have been transferred to other than the original medium on which they were sold is unauthorized.

## THE TRADEMARK RIGHTS OF THE PLAINTIFF

27. Plaintiff SLEP-TONE is the owner of U.S. Trademark Registration No. 1,923,448 for the trademark SOUND CHOICE.

28. Plaintiff SLEP-TONE is also the owner of U.S. Trademark Registration No. 2,000,725, for a display trademark as follows:



29. Plaintiff SLEP-TONE has, for the entire time its marks ("the Sound Choice Marks") have been federally registered, provided the public, including the Defendants, with notice of its federal registrations through the consistent display of the symbol ® with its marks as used.

6

30. Plaintiff SLEP-TONE marks its goods with the Sound Choice Marks in various ways, namely by placing the Sound Choice Marks upon the packaging for the compact discs it distributes, by placing the Sound Choice Marks upon the compact discs themselves, and by encoding information upon the compact discs that, properly translated by appropriate equipment, causes the Sound Choice Marks to be displayed on a television or computer monitor during playback of the disc.

31. In particular, the latter display is encoded to occur at least at the beginning and the end of any particular karaoke accompaniment track and, in many cases, during instrumental musical breaks during the song.

32. The Sound Choice Marks are displayed at various times during the playback of a Sound Choice track, whether or not the track being played is a lawful original or an unauthorized counterfeit copy.

## THE BUSINESS ACTIVITIES OF THE DEFENDANT

33. Defendant GLASS operates an unincorporated business, one purpose of which is to sell computer hard drives on which counterfeit copies of SLEP-TONE's karaoke accompaniment tracks have been stored.

34. Defendant GLASS refers to herself in advertising and on her website as "DJ Beverly."

7

35. Defendant GLASS advertises the availability of computer hard drives containing thousands of karaoke accompaniment tracks for sale.

36. Defendant GLASS's advertisements are typically placed on the website craigslist.org.

37. The website craigslist.org organizes its advertising by geographic region and by type of advertisement (e.g., "for sale / wanted : cds / dvds / vhs).

38. Defendant GLASS's advertisements, recent examples of which are attached hereto as Exhibit 1, have been identified as having been placed in geographic areas around the United States.

39. In those advertisements, Defendant GLASS indicates her willingness to ship the goods to the buyer.

40. In her advertisements, Defendant GLASS touts the use of her computer hard drives "to run a complete professional Karaoke Show."

41. Defendant GLASS's more recent ads have begun to include the language "Can not be used for profit" and "Music is not for sale, only the hard drive, music is free due to copy rights." [*sic*]

42. Upon information and belief, Defendant GLASS typically sells between five and ten computer hard drives in any given week, usually for prices between $300 and $500.

43. Upon information and belief, the computer hard drives Defendant GLASS sells are available at retail from various sources at approximately $100 or less, such that no reasonable person would purchase one from Defendant GLASS but for the inclusion of the music library stored thereon.

## THE COUNTERFEIT NATURE OF THE DEFENDANT'S GOODS

44. Defendant GLASS has stored in excess of 100,000 karaoke accompaniment tracks in a digitized format upon one or more master computer hard drives.

45. Upon information and belief, Defendant GLASS's collection of karaoke accompaniment tracks includes computer files representing in excess of 15,000 karaoke accompaniment tracks that have been marked with the Sound Choice Marks.

46. Upon information and belief, Defendant GLASS obtained most or all of the karaoke accompaniment tracks she has stored on her master computer hard drives through illicit means, such as by purchasing tracks or hard drives from other sellers, by downloading tracks from pirate websites, or by shifting tracks from original discs to her master computer hard drives.

47. In order to manufacture the goods she is selling, Defendant GLASS begins with a blank, formatted computer hard drive, which is attached to a computer with one of her master computer hard drives also attached.

9

48. Defendant GLASS then directs her computer's operating system to copy files representing karaoke accompaniment tracks from the master computer hard drive to the new hard drive, an operation that requires little personal interaction and at most two to three hours to complete.

49. Because of the manner in which Defendant GLASS manufactures the goods, each computer file stored on the new hard drive is a bitwise copy of the corresponding file on the master hard drive, including the encoding which represents the marking of the Sound Choice Marks upon the tracks.

50. Because Defendant GLASS directed the creation of the computer files on the new hard drive, she is the manufacturer of those computer files for all intents and purposes.

51. Because Defendant GLASS directed the creation of the computer files on the new hard drive, she has caused the Sound Choice Marks to be placed upon the computer files she has created.

52. Transfers of this type, particularly when conducted with the intent and for the purpose of transferring the computer hard drive to a third party for use in a professional karaoke show, are expressly prohibited by SLEP-TONE.

53. SLEP-TONE has not licensed, authorized, or extended tolerance to any person for the marking of its trademarks upon computer files representing

karaoke accompaniment tracks for the purpose of transferring those tracks to a third party.

54. Accordingly, Defendant GLASS's activities in creating these tracks are without authority and constitute counterfeiting.

## VERIFICATION OF DEFENDANT'S INFRINGEMENT OF THE SOUND CHOICE MARKS

55. On or about May 18, 2011, an employee of SLEP-TONE, acting at the direction of SLEP-TONE and its attorneys, met with Defendant GLASS without disclosing his employment by SLEP-TONE.

56. The employee of SLEP-TONE arranged the meeting with Defendant GLASS for the express purpose of purchasing a hard drive that Defendant GLASS had advertised for sale.

57. During that meeting, the employee of SLEP-TONE purchased a hard drive from Defendant GLASS, which hard drive is being deposited with the Court as evidence in this matter.

58. The purchase price of the hard drive was $350.00, and Defendant GLASS provided the employee with a handwritten receipt on the back of one of her business cards.

59. Following the purchase of the hard drive, SLEP-TONE conducted an analysis of the hard drive to determine what contents were stored thereon.

60. SLEP-TONE's analysis resulted in the determination that substantially all of SLEP-TONE's catalogue of karaoke accompaniment tracks, numbering in excess of 15,000 tracks and including SLEP-TONE material that is no longer being offered for sale, were represented in computer files electronically stored on the hard drive.

61. SLEP-TONE's analysis also resulted in the determination, based upon the "file modification" dates stored upon the hard drive, that the files had been stored on the hard drive the night before Defendant GLASS sold the drive to SLEP-TONE's employee.

## FIRST CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT

62. By offering for sale and selling computer hard drives preloaded with computer files created by her and containing karaoke accompaniment tracks bearing the Sound Choice Marks, Defendant GLASS used a reproduction, counterfeit, or copy of the Sound Choice Marks in connection with the sale, offering for sale, and distribution of goods.

63. Defendant GLASS's use of the Sound Choice Marks in this manner is likely to cause confusion, or to cause mistake, or to deceive.

64. Specifically, Defendant GLASS's customers are likely to believe that the material she is selling and distributing to them is authorized, legitimately

12

licensed material, sold with the approval of SLEP-TONE, based upon the use of its trademarks.

65. Defendant GLASS'S use of the Sound Choice Marks is "in commerce" within the meaning of the Trademark Act of 1946 as amended.

66. Plaintiff SLEP-TONE did not license Defendant GLASS to manufacture reproductions, counterfeits, or copies of its marks.

67. Defendant GLASS's acts were willful and knowing and were conducted with the intent to injure SLEP-TONE.

68. As specifically evidenced by Defendant GLASS's attempt to couch her sales as hard drives only, with "free" karaoke music, Defendant GLASS has actual knowledge that her activities constitute infringement.

69. Even if her distributions were free, such distributions would still constitute trademark infringement.

70. Defendant GLASS acted repeatedly and wantonly, selling hard drives to any willing purchaser, without regard for the rights of persons, including SLEP-TONE, to the exclusive use of their intellectual property.

71. As the direct and proximate result of Defendant GLASS's acts as described herein, SLEP-TONE has been damaged through the derogation of its exclusive rights in the Sound Choice Marks and through the loss of sales

13

Case 3:11-cv-00335-GCM   Document 2   Filed 07/13/11   Page 13 of 20

associated with the purchase of legitimate original discs containing SLEP-TONE's accompaniment tracks.

72. Unless enjoined by the Court, Defendant GLASS's infringing activities as described above will continue unabated and will continue to cause harm to the Plaintiff.

## SECOND CLAIM FOR RELIEF
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## UNDER 15 U.S.C. § 1125(a)

73. On each occasion on which she sold a computer hard drive containing computer files associated with karaoke accompaniment tracks and marked with the Sound Choice Marks, the contents of which computer hard drive she herself compiled and created, Defendant GLASS used a word, term, name, symbol, or device that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of her with SLEP-TONE, and as to the origin, sponsorship, and approval of her goods and commercial activities.

74. On each occasion on which she sold a computer hard drive containing computer files associated with karaoke accompaniment tracks and marked with the Sound Choice Marks, the contents of which computer hard drive she herself compiled and created, Defendant GLASS falsely designated the

14

Case 3:11-cv-00335-GCM   Document 2   Filed 07/13/11   Page 14 of 20

origin of those contents in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of her with SLEP-TONE, and as to the origin, sponsorship, and approval of her goods and commercial activities.

75. On each occasion on which the hard drives that Defendant GLASS sold are used to provide karaoke entertainment services, and karaoke accompaniment tracks marked with the Sound Choice Marks are played, the display of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by SLEP-TONE and purchased legitimately by Defendant GLASS's customer.

76. But for Defendant GLASS's use of the Sound Choice Marks in this fashion, Defendant GLASS's customers would have been prompted to purchase legitimate original discs from SLEP-TONE or its authorized distributors, commensurate with the actual demand for that material at commercially reasonable prices, and those sales would have inured to the benefit of the Plaintiff in the form of revenue from such sales.

77. Because SLEP-TONE has been denied this revenue, it has been damaged by Defendant GLASS's uses.

78. Unless enjoined by the Court, Defendant GLASS's unfair competition activities as described above will continue unabated and will continue to cause harm to the Plaintiff.

### THIRD CLAIM FOR RELIEF
### UNFAIR AND DECEPTIVE TRADE PRACTICES
### UNDER N.C. GEN. STAT. § 75-1.1

79. Defendant GLASS has engaged in acts of infringement of the Sound Choice Marks, in derogation of SLEP-TONE's common-law and statutory rights in those marks.

80. Moreover, by selling counterfeit materials that are functionally the equivalent of SLEP-TONE's bona fide, legitimate goods at commercially unreasonable prices, Defendant GLASS has acted in a manner that is insulting to the Plaintiff's brand image as the producer of a premium karaoke accompaniment track product.

81. Defendant GLASS's acts of infringement have unfairly forced SLEP-TONE to compete against products derived from its own creations and sold, without authorization, under its own trademarks, at bargain-basement prices that Defendant GLASS has only been able to charge because her input costs are virtually zero.

82. Defendant GLASS's acts of infringement and unfair competition occurred during the conduct of trade or commerce in North Carolina.

83. Defendant GLASS's acts of infringement and unfair competition constitute unfair or deceptive acts or practices within the meaning of G.S. § 75-1.1.

84. As a direct and proximate result of Defendant GLASS's acts of infringement and unfair competition, SLEP-TONE has suffered a pecuniary loss, to wit: the loss of revenue associated with sales or distribution of compact discs to karaoke jockeys, commensurate with the demand for the contents of those discs at commercially reasonable prices, which revenue would have been received but for Defendant GLASS's acts in creating, selling, and distributing counterfeits of SLEP-TONE's accompaniment tracks.

85. As such, SLEP-TONE has been "injured" within the meaning of G.S. § 75-16.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff SLEP-TONE prays for judgment against Defendant GLASS and that the Court:

A. Find that Defendant GLASS has committed acts of infringement involving counterfeiting of the federally registered Sound Choice Marks;

B.  Find that Defendant GLASS has engaged in unfair competition and the false designation of origin against Plaintiff SLEP-TONE in violation of 15 U.S.C. § 1125(a);

C.  Find that Defendant GLASS has committed unfair and deceptive trade practices under North Carolina law;

D.  Enter judgment against Defendant GLASS and in favor of SLEP-TONE;

E.  Find that Defendant GLASS's acts were in all respects conducted willfully and for profit, and with actual knowledge that her acts were prohibited by law;

F.  Award to SLEP-TONE Defendant GLASS's profits and the damages sustained by SLEP-TONE because of her conduct in infringing the Sound Choice Marks, or, in the alternative, statutory damages per trademark infringed by counterfeiting in an amount up to two million dollars per mark infringed;

G.  Award to SLEP-TONE Defendant GLASS's profits and the damages sustained by SLEP-TONE because of her acts of unfair competition and false designation of original under 15 U.S.C. § 1125(a);

H.  Award to SLEP-TONE treble, punitive, or otherwise enhanced damages, as available, for Defendant GLASS's acts of willful infringement;

18

Case 3:11-cv-00335-GCM   Document 2   Filed 07/13/11   Page 18 of 20

I. Award to SLEP-TONE its actual damages caused by Defendant GLASS's deceptive and unfair trade practices, trebled as provided in G.S. § 75-16, plus its attorney's fees and court costs as provided in G.S. § 75-16.1;

J. Order, pursuant to SLEP-TONE's motion filed concurrently herewith, the seizure from Defendant GLASS of goods and counterfeit marks involved in the violation described herein and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in the violation;

K. Order the seizure and destruction of all computer disks, drives, or other media belonging to or in the possession of Defendant GLASS, which media contain illegal counterfeits of registered trademarks;

L. Grant SLEP-TONE preliminary and permanent injunctive relief against further infringement of the Sound Choice Marks by Defendant GLASS;

M. Award SLEP-TONE its costs of suit and attorney's fees, to the extent not awarded above; and

N. Grant SLEP-TONE such other and further relief as justice may require.

Respectfully submitted this the 13th day of July, 2011.

                                **HARRINGTON LAW, P.C.**

                                By: /s/ James M. Harrington
                                James M. Harrington
                                N.C. State Bar No. 30005
                                jharrington@harringtonlawpc.com
                                *Attorney for the Plaintiff*

HARRINGTON LAW, P.C.
PO Box 403
Concord, North Carolina 28026-0403
Telephone: 704-315-5800
Facsimile: 704-625-9259